Mr. Dabney, Mr. C, may it please the court, James W. Dabney, Hughes Hubbard for the plaintiff appellants, I'd like to reserve five minutes time for rebuttal. All right, watch your clock. Thank you. This appeal concerns what a copyright claimant must do and must prove to justify a pretrial suppression of allegedly infringing material for longer than the 14 business day period specified in 17 U.S.C. 512 G2. The plaintiff sought merely to enforce the district court's exclusive jurisdiction to decide whether the defendants had a legal right to pretrial suppression of plaintiff's material for longer than the 14 day period specified in 512 G2. The key question of statutory construction raised in this appeal is the language in 512 G2. 512 G2 provides that not more than 14 business days after receiving a counter notification a service provider must cease disabling access to removed material unless it receives notice that the copyright claimant has, and I quote, filed an action seeking a court order to restrain the subscriber from engaging in infringing activity, unquote. So at issue here is what is meant by filed an action seeking a court order to restrain, which appears on page 8 of the addendum to our reply 112 STAT 2883. Just to clarify, I thought that the 512 G referred only to the incentives provided to the ISP. In other words, these are safe harbors to the ISP, which the ISP could choose to follow or not. Am I mistaken on that? No, that's absolutely correct. But the correct interpretation of those incentives is critical to the resolution of this appeal, and that's why the defendant standing argument has no merit. The correct decision of 512 G2, which will obviously influence the behavior of service providers, including valve, is very critical to the correct determination of this appeal. So I agree with your honor that 512 G did not revolutionize how infringement claims are decided by 512 provided service providers with immunity to monetary, monetary liability, including attorney's fees, if but only if they behave in a certain way. So that's absolutely correct. So the critical language filed an action seeking a court order to restrain Appellants proposed construction of this is that seeking means seeking now in the present. And the other side's proposed interpretation effectively invites the court to rewrite 512 G2 to read, quote, filed an action giving notice of a claim of right to seek in the future, a court order to retrain. Every experienced litigator knows the difference between filing a complaint and seeking a court order. If the mere filing of a complaint were all that was necessary to negate a counter notification delivered under 512 G3, it would mean, as this case shows, that a copyright claimant could secure indefinite pretrial suppression of a rival's work without ever proving to a court that such suppression was justified in law and equity. The only sensible reading of 512 G2 we submit is that it gives copyright claimants 14 business days, which is a long time in copyright litigation, 14 business days in which to seek a court order restraining the alleged infringement identified in a notice previously given under 17 512 C. If, as happened in this case, the copyright claimant does not do that, then in order, Judge Acuda, for the service provider to preserve its immunity to monetary liability, it must cease disabling access to previously removed material and that cessation will then trigger the immunity offered under 17 U.S.C. 512 G4. So help me understand this. If SWC – if we agreed with your interpretation and SWC sought the wrong sort or brought the wrong sort of action in court in its counterclaim, then the only result would be that if Valve replaced the material, it wouldn't be – it would have a different safe harbor. It wouldn't have liability. I mean, I guess I don't understand the implications of your argument in this context because this is all about Valve's safe harbor. Thank you for that question. No, it's not that they brought the wrong kind of action. It is that they very purposefully and strategically did not seek a court order to restrain the infringement. And so what result? So let's say we agree they didn't do the right thing to get – for getting the benefit of their continued takedown order. What are the implications of that for this case? The implication of that is that Valve would expose itself to liability if it did not replace the previously removed material. And it would be relieved of its misimpression that apparently it has to indefinitely suppress our client's product in order to – you could have sued Valve – if I'm understanding correctly, under the DMCA structure, your client could have sued Valve and said, you need to put it back because we gave you the counter notice and the 14 days has passed and SWC hasn't filed – and therefore you have potential liability under our distribution agreement. But that's not the action we have. I mean, that seems to be the implications of your argument for the DMCA statute, but that's not the action we have before us. So help me understand why, I guess, your client didn't sue Valve. That would seem to be what DMCA would permit, if your interpretation is correct. The complaint here is that the other side has apparently persuaded Valve of a misapprehension of the statute. The other side has argued in the briefs in this case that the filing of their complaint negates the counter notification, and therefore Valve has no obligation to restore. That is the very mistaken interpretation of 512G that we are asking this court to correct. If this court were to rule that the way the statute works is that if a claimant in their position does not test its claim in court by seeking a court order to restrain as 512G contemplates, then in order to preserve its immunity to monetary liability, the service provider has to restore the previously removed work, and then the copyright claimant can seek its relief in court. If the other side's position were accepted, then there would be no recourse under G1, because they claim that they negated the effect of the counter notice under G2. So it's very critical that we get this interpretation correct. And finally, I realize I'm running out of time. I believe that the motion that we filed is one that is very analogous to the motion for anti-suit injunction that this court decided in the E.J. Gallo winery case, 446 Federal 3rd 984. In that case, as in this case, the plaintiff claimed a right to have a United States court decide the merits of the party's dispute. And all it sought was to require the United States court to take jurisdiction and stop the defendant from trying to evade its jurisdiction by proceeding elsewhere. In this case, the defendant wasn't trying to proceed in another court. It was trying to prey on the uncertainty and self-interest of a service provider. And just as here, the court said the usual four-part test for preliminary injunctive relief doesn't apply in a case like this. It said, well, we're going to reverse the denial of preliminary injunction for two reasons. First, the claims are the same. Claims pending before us are the same as the one that the defendant is trying to assert elsewhere. And number two, it would affirm an important policy of the forum in order to enforce, in this case, the statutory scheme and all of the procedural protections that are accorded to a litigant in the United States courts against having the kind of catastrophic loss our clients have suffered without discovery, without trial, and so on. So we think that the district court applied the wrong legal standard. The liberty and property interests at issue in this case are at least as weighty as the policy interests that this court upheld in E&J Gallo. For very good reasons, copyright claimants have to clear many hurdles in order to get an extended pretrial suppression of a rival's work. These defendants did not carry that. They didn't even attempt to. And therefore, if the court agrees with us on the legal standard, the court should reverse. I'd like to preserve the rest of my time. Thank you. All right. Thank you very much, counsel. Mr. Schwartz. Good morning, Your Honors. Robert Schwartz, and with me is Moon Hee Lee, my colleague. We're here for the appellees in this matter. I think, from a very high-level view, what's going on in this appeal is not so much discomfort with what the district court judge did in this case, or any of the positions that we took in this case, but rather a fight with Congress. Congress, in 1998, made some very important policy decisions in adopting the DMCA. And among those policy decisions, and specifically with respect to subsection G, was the notion of protecting Internet service providers, protecting the party in Valve's shoes in this case, against claims by copyright owners like us for copyright infringement, and giving them safe harbors, both from a damages standpoint and also from an injunctive standpoint, if they comply with the procedures that Congress adopted. What's happened in this case is a very traditional, by-the-book application of the preliminary injunction standards, even for a plaintiff seeking merely declaratory relief, that imposed, in the first instance, the burden on that plaintiff to establish all four winter factors. And let's remember that winter itself was not just a preliminary injunction case, but it was a declaratory relief preliminary injunction case. So the Supreme Court has told us that if you are a declaratory relief plaintiff, as Angela was here, and you seek a preliminary injunction, you bear the burden on all four factors. Now let me circle back to the legislative history and the intent behind 512G, which I think Your Honor alluded to when you were asking questions about what the purpose behind that part of the DMCA was. It's all about protecting the service provider. There is nothing, nothing in either Section G or anywhere else in the DMCA that says anything about the two fundamental principles that the appellant's appeal is based upon. The first is there is nothing in there about burden shifting, and most importantly, there is nothing in there that says that we, as the copyright owner, have any obligation to file to seek a preliminary injunction as part of the takedown notice process. In fact, I'd refer Your Honors to the Stardot case where in the Northern District of California, the court wrote in a DMCA takedown preliminary injunction case that the party in Angela's shoes is really confused into thinking that a DMCA notice is some form of judicial act or some form of preliminary injunction or whatever those other terms were that counsel used because it is not within our power as a party who is submitting a DMCA notice to command Valve or anybody we send a notice to, to do anything. All we can do with that... You seem to be arguing that you should have brought a suit and sought a preliminary injunction. SWC should have. Well, let me step aside and talk reality. We are going to move for a preliminary injunction in this case. If the court is interested, we've been waiting for the independent court expert to complete his work, which Angela has frustrated for a period of months. That report is now in, and it has confirmed, the court's neutral code expert, that they copied massive amounts of our code and went to extraordinary lengths to hide it. Now, we asked for them to submit to that in December. It took until August to get it. That is why we have not yet moved for a preliminary injunction, but we have already told them in the last week or so that we are going to now, in light of what the court-appointed expert has found about their conduct in infringing our copyrights. But let's go back to the preliminary injunction and this notion that we should have had to do that. That is nowhere in the legislative history. It is nowhere in the statute, in the case law, or in the statute. If you look at this court's decision in the Lens v. Universal Music Group case, that's the Dancing Baby and the Prince song, Let's Go Crazy. And there, DMCA issues, and the court recites, what is the standard for compliance on our part in response to a counter-notice within this 14-day period? At page 1151 of the opinion, the court says that under 512G, the service provider, that is Valve here, need not restore content upon receipt of a counter-notice if the copyright owner, us, has, quote, filed an action against the user seeking to restrain the user's infringing behavior. It says nothing about actually moving for a preliminary injunction, much less getting it. Beyond Blonde, which I think is a very instructive case here, says exactly the same thing. You simply have to file an action in which you have part of the relief you seek, the seeking, is a preliminary injunction. And let's parse the language. Let's really look closely, because if we're going to get schooled on grammar, I'd like to stand up here and explain to you grammatically why what they're urging you is wrong. So, and bear in mind, again, no court has ever said this. Every court who's looked at this has not adopted this when invited to do so or otherwise. The verb in that phrase is has filed. That's a past participle, and so filed is the verb. Has is the auxiliary verb that makes has filed a past participle. And that means to complete, indicates completion of the action. And what must be filed within that period of time? An action, a lawsuit. The noun is lawsuit, and the lawsuit then has an adjective phrase, a descriptive phrase, a lawsuit seeking to restrain. We'll just paraphrase. But seeking is the word their entire appeal on this point relies on. Well, what is seeking? Seeking is a participle phrase. You take the verb seek, you add the ing, which sometimes makes it a gerund. I apologize for the grammar police being here, but they've made this an issue and I'm not going to stand for that error. So you have a participle phrase. That is a modifier. It is no longer a verb. And it follows the noun lawsuit, or action rather, to describe as an adjective. What is the attribute of this lawsuit? One attribute of this lawsuit or this action is that it includes a request for a form of injunctive or a restraint on conduct. So if Congress intended what Angela is suggesting here today, if Congress really said you not only have to sue but you have to move for a preliminary injunction, it would have been really easy to write the sentence the way they're reading it. And what Congress would have said has filed an action and has sought or has moved for, not seeking, which is the participle phrase that is an adjective, an injunction. If it said has filed an action and has sought a restraining order, then those verbs align and what they're saying would make sense. But that's not what Congress said. Why did Congress say it this way? I'd be guessing, and I'm not going to guess. The important thing, I have a theory about it, but the important thing is Congress didn't write it that way. This is counsel's Hail Mary to try and get you to disregard the language, as it appears quite clearly, that rejects what they're talking about. Can I ask you the same question I asked opposing counsel, which is what are the implications if, in fact, SWC filed the wrong sort of action? If we agreed with the interpretation, what are the implications of that? I apologize. I'm not following your question. How does that affect this lawsuit? I mean, the only thing that would matter is that Valve was relieved from the obligation of continuing to keep the game off of its server in order to retain its safe harbor. But since Valve isn't a party to this lawsuit, I just don't see how this interpretation makes a difference to the appeal here. So maybe you could explain that to me. I apologize. I mean, we didn't do anything. We did file counterclaims against Angela for copyright infringement, as we felt was our responsibility to preserve or to fulfill our obligations under G, and we did it on a timely basis, and we sought injunctive relief. So what is the lawsuit? What would be the wrong lawsuit, I'm sorry, Your Honor, that you're asking about? So as I understand it, the argument Angela is making is that SWC should have sought a preliminary injunction and did not do so, and that this language should be interpreted as requiring SWC to seek a preliminary injunction, and they didn't do so. And so my question is, what difference does that make whether how we interpret this language? How does that affect the particular case we have before us? Well, I guess I don't think it affects it. If I'm understanding correctly, which I may not be, and I apologize, I don't think there is an effect. I mean, you're saying if we don't— You gave us an argument as to why we should interpret this language in one way as opposed to the way they want. Yes. And my question is, what difference does that make for our resolution of this case? Well, I think the difference it makes is it's undisputed that we have not yet filed a motion for a preliminary injunction. If Valve—excuse me, if we didn't do that and the statute is as—Angela says it is, then— If the statute required it, then Valve would be required to put up the— And it required it. Then Valve would be free to make— Right, but since they're asking for rescission of your takedown notice, I just don't see how any interpretation of this language has any bearing on that particular issue. I think I agree with Your Honor, but I apologize if I'm giving something away that I don't intend to that's fatal to our case. I've been having a very hard time following their arguments on this appeal, frankly. Well, if the takedown notice were not in effect, which you put it in effect by timely filing your counterclaim, if it weren't in effect, then Valve would be at risk of a lawsuit. It would. By Angela. And by us. For breach of contract and for you, by you, your client, for copyright infringement, right? Yes. If Valve—it's up to Valve to decide what to do. Except that it's protected by the takedown notice that you made effective by filing your counterclaim. Right, and even if it is ultimately determined that their game is not infringing, it's protected by compliance with the takedown notice, by keeping it down in response to what we did. Yes. Does that not answer the question? It's fine. I apologize. What do you think is at stake here? The district court denied the motion for preliminary injunctive relief, which I thought was to rescind, asking SWC to rescind its takedown notices. That's wrong? That is the relief they asked. That's the relief. So I just—I don't see the relationship between that request and this language that you were interpreting for us. Well, I was simply saying that—I was really responding to their interpretation of the language. I understand that. As saying that if we didn't move for a preliminary injunction, then Valve would be at risk, perhaps. And let's say they are at risk.  Yeah, I guess I don't—so Valve's risk doesn't seem to relate to their request for you to rescind the takedown notice. Yeah, I guess the way I put it, I frame it in terms of a standing issue and the redressability and traceability required. Because Valve is a third party. They're not here. They're free to do whatever they want or not to make sound or unsound economic decisions about risk and whatever they want to do, but we're not able to control what they're going to do. And they've not said that if we took down our notice or withdrew our notice, they'd put the game back up the way the defendant or the third party, Amazon, did. Would—if we agreed with the interpretation that Angela has given of this language on filed an action seeking a court order, say we agreed with that, would that mean that they would likely succeed in their requirement that Valve, that SWC, rescind its takedown notice? I just don't see how those two things are related. No, I don't think so. They still have to prove—that just sort of sets the table for getting an injunction at most. They still have to carry the winter factors. Is there any case where a court required a party to rescind a takedown notice? Yes. Yes. What is that case? Beyond Blanc. Oh, Beyond Blanc. But I commend you to Beyond Blanc because I think in terms of articulating the legal framework, it's exactly what we're saying and exactly the opposite of what Angela— That's why you're arguing that they don't even have standing to bring— We are. Or even to bring this appeal because they—Valve is a third party and it's not going to be obligated. Valve can make its own decisions at this point. Exactly. And that under Yazzie, the Ninth Circuit decision we cited in our brief, means there's no standing. There's no connection between the action they ask us to take and the damage or remedy they seek, which is getting their game put back up. But really all we're reviewing is the district court's denial of Angela Online's request for a mandatory preliminary action. Correct. And it is mandatory. I apologize. I'm running out of time, but I don't want to—I want to answer any questions that you have if you have further questions. Well, it is a little confusing, the posture of this case. It is because Angela ran to court when we served the notice on Valve to seek declaratory judgment of non-infringement. But it also sent it some counter notice. It did, yes, which happens. But, I mean, what they're asking you to do is just completely upset the statutory scheme that Congress established, for very good reason that Congress established it. That's a beef with Congress, not with what the district court did, and not with anything the court system in the Article III part of the Constitution has anything to do with. It's really important to realize not only do they lack standing, but the district court was well within her discretion to find, as she did, they had no evidence to carry any burden, lesser burden, our burden. Whatever the burden is, it's irrelevant to this. We put forth volumes of evidence of infringement from our chief technology officer, from our expert, from a third party who found the Battle Eye Implementation Code to be infringed. And so even if we get to the level of looking through the winter factors, which every court from winter on down says it's on Angela as the moving party, they don't get anywhere near a reversal of the denial of the preliminary injunction. So thank you very much. Do we have any more questions? Okay, thank you. Thank you. Mr. Dabney, you're muted. I'm doing a panel on Friday morning about it's called Is This Thing on Mute? And my position is I have to tell everybody to unmute. Can I ask a question before you jump in? So you say the defendant was required within 14 days to take action in addition to just filing a lawsuit. Do you think it would have been sufficient just to file a motion for injunctive relief? Did the defendant have to get a hearing? Did it have to actually obtain a preliminary injunction? What reading of the statute would answer that question? And how would you decide? Your Honor, seeking a court order to restrain the subscriber from engaging in alleged infringing activity describes proactively asking the court for that relief, not necessarily getting it granted, but they have to be at least seeking it. And there's a very good reason why the statute provides for that. Whenever a copyright claimant seeks pretrial suppression before discovery, before trial, before judgment, they ordinarily bear the burden of proving inadequacy of legal remedies, likelihood of success, and so on. The burden is all on the copyright claimant. And the reason why the proper construction of G2 is so important is that it channels disputed copyright claims into court. And in response to the questions from Judge Ikuda, the design of 512 is, yes, to give incentives to service providers. They can be immunized from liability if they behave in certain ways. And the reason we have standing, as we show in the Wild Earth case and in our reply brief, is that we contend that Valve was wrongly induced to cut off service to the plaintiffs. We gave a counter notice. And what the statute contemplated in response to the counter notice is not that, you know, the self-interest or the uncertainty of a nongovernment actor decides the controversy. It's required to restore the work and get out of the crossfire so that the litigation is then decided in court. And in the court, it's not a question of whether we have a high burden or low burden. The defendants have, the plaintiffs have no burden on this. Our motion for preliminary injunction was like the complaint in the Medtronic case. It drew in question the defendant's claimed right to pretrial suppression of our client's work. And the allegations, including these ones made here today about infringement and copying, continue to be bitterly denied and disputed by our clients. It's not part of the record of this appeal. But it absolutely, the correct interpretation of this statute as shown in the Wild Earth case, if you have multiple causes of your injury, you have standing, if there is some possibility that the court's decision will cause the third party to reconsider its decision, that's Massachusetts against EPA and the Wild Earth case. So there's no question but that if this court rules that Valve would put itself in harm's way if it doesn't restore the work and thereby partake of the new immunity under 512G, well, then the some possibility standard, the relaxed redressability standard, gives our clients standing. This case is not at all like Winter. Our motion is not seeking a preliminary injunction in support of our own claim on which we have the burden of proof. Our motion drew in question the other side's claim of right to suppress our work indefinitely. This is also not a case like Stardot. We're not saying they couldn't file a takedown notice. We're not trying to stop them from putting down a takedown notice. This is a 512G case that says if you want more than 14 days suppression of your rival's work, you have to go to court and test your claim according to standards of law and equity. You've got to show likelihood of success, inadequacy of legal remedies, balance of hardship, public conventions, and above all, freedom from inequitable conduct. Their position means that, you know, not only is a person in our client's position presumed guilty until proven innocent, but that if they engage in the misconduct that they stand charged with in this case, well, then they're rewarded for that because it makes it harder for the agreed party to get relief. And since they never asked for equitable relief, then their misconduct is of no consequence. So this is a case in which all the plaintiffs asked for in this case was for the procedural due process that any litigant in federal court in a copyright case is due. If someone is going to get indefinite suppression of our work, catastrophic injury, they have to show that they're entitled to it and not game the system by lobbing a notice into a service provider and then standing back and doing nothing. We respectfully submit that the DMCA is this minimalist statute that basically provides immunities to service providers, and for disputed cases like this, it channels disputes into court. The service provider is immune to monetary liability, but it gets, in our scenario, liability under G-4 and is subject to injunction under J-1 if, but not for attorney's fees. All right, counsel. I gave you a minute extra like I gave the other side, and I think that we understand your argument. So thank you very much. This matter will be submitted, and this court is adjourned for the remainder of this session. Thank you. All rise. The session is now adjourned.
judges: WARDLAW, IKUTA, Vratil